UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE EARL STEPHENS,<br><br>    Plaintiff,<br><br>    v.<br><br>E. MONTEJO,<br><br>    Defendant. | No. 2:18-cv-1796 KJM DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. §1983. Plaintiff alleges defendant was deliberately indifferent to his serious medical needs in the treatment of his prostate. Before the court are both parties' motions for summary judgment and plaintiff's motion to strike. For the reasons set forth below, this court denies plaintiff's motion to strike, recommends plaintiff's motion be denied, and recommends defendant's motion be granted.

**BACKGROUND**

This case is proceeding on plaintiff's third amended complaint filed March 2, 2020. (ECF No. 67.) Plaintiff alleges that in late 2018, defendant Dr. Montejo refused to order further testing, a biopsy, or a special diet for potential prostate cancer after an examination of plaintiff showed an enlarged prostate and a high prostate-specific antigen ("PSA"), that had increased substantially in a year. Plaintiff contends that earlier treatment could have lowered his PSA. In October 2019, a

////

prostate biopsy was positive for prostate cancer.[1]  On screening, this court found plaintiff stated a cognizable claim that Montejo was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  (ECF No. 74.)

On January 3, 2022, plaintiff filed a motion for summary judgment.  (ECF No. 105.)  This court granted defendant's motion to stay briefing on plaintiff's motion until defendant had the opportunity to conduct discovery.  (ECF No. 110.)  On May 30, 2023, defendant filed a motion for summary judgment and an opposition to plaintiff's motion.  (ECF Nos. 159, 160.)  Plaintiff filed an opposition (ECF No. 161) and defendant filed a reply (ECF No. 162).  Plaintiff then filed a motion to strike defendant's reply brief.  (ECF No. 163.)

**MOTION FOR SUMMARY JUDGMENT**

**I.  Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).

---

[1] Plaintiff also alleged a claim that Montejo failed to treat his chronic kidney disease.  Plaintiff withdrew that claim.  (See ECF No. 110 at 1.)  Therefore, this case is proceeding solely on plaintiff's claim regarding treatment for his prostate.

2

1   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,
2   against a party who fails to make a showing sufficient to establish the existence of an element
3   essential to that party's case, and on which that party will bear the burden of proof at trial.  See
4   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the
5   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a
6   circumstance, summary judgment should be granted, "so long as whatever is before the district
7   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.
8          If the moving party meets its initial responsibility, the burden then shifts to the opposing
9   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita
10  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
11  existence of this factual dispute, the opposing party typically may not rely upon the allegations or
12  denials of its pleadings but is required to tender evidence of specific facts in the form of
13  affidavits, and/or admissible discovery material, in support of its contention that the dispute
14  exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  However, a complaint that
15  is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified
16  complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise
17  from personal knowledge and contain specific facts admissible into evidence.  See Jones v.
18  Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.
19  1995) (accepting the verified complaint as an opposing affidavit because the plaintiff
20  "demonstrated his personal knowledge by citing two specific instances where correctional staff
21  members . . . made statements from which a jury could reasonably infer a retaliatory motive");
22  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d
23  407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because
24  it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury
25  pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would
26  an affidavit for the purposes of summary judgment.").  The opposing party must demonstrate that
27  the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
28  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II. Analysis**

In his motion, plaintiff alleges the undisputed facts show the following. In late 2018 defendant knew plaintiff had a high PSA and an enlarged prostate. Plaintiff has a family history of prostate cancer. Plaintiff alleges defendant was deliberately indifferent to his medical needs when he did not order a prostate biopsy at that time, order PSA tests every 45 days, or order a special diet.[2] In October 2019, plaintiff was diagnosed with prostate cancer.

---

[2] Plaintiff also argues that CDCR has no policy of regular PSA testing for African American inmates, who are at higher risk for prostate cancer. Plaintiff is only pursuing claims against defendant Montejo. Any lack of a policy by CDCR bears little if any relevance to plaintiff's claims about Montejo's conduct. This court will not consider those arguments here.

Defendant also contends the material facts are undisputed but argues that they show a disagreement about treatment, not deliberate indifference to plaintiff's medical care.

Plaintiff moves to strike both defendant's opposition to his motion for summary judgment and defendant's reply to defendant's motion. (ECF No. 163.) The gist of plaintiff's motion to strike is that because defendant stated in discovery that he did not have access to plaintiff's grievances, but attached one to his opposition brief, he should be sanctioned. Defendant did not file an opposition to the motion. This court finds plaintiff's motion meritless for several reasons. First, defendant had the right to seek plaintiff's grievances in discovery. This court granted defendant's motion to compel plaintiff to provide those grievances. (See June 29, 2022 Order (ECF No. 128) at 6.) In response, albeit belatedly, plaintiff provided defendant with copies of those grievances. (See ECF No. 147 at 3.) Therefore, defendant had access to plaintiff's grievances and had every right to include them as exhibits to his brief. Plaintiff's motion to strike will be denied.

**A. Legal Standards for Eighth Amendment Medical Claim**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

////

1    For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**B. Material Facts**

Both parties filed statements of undisputed facts along with their summary judgment motions. (Plaintiff's Stmt. of Undisputed Facts ("PSUF") ECF No. 105 at 7; Defendant's Stmt. of Undisputed Facts ("DSUF") ECF No. 159-5.) Local Rule 260(b) requires a party opposing a motion for summary judgment to specifically address each fact alleged to be undisputed and, for those facts the party disputes, provide a citation to "any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." E.D. Cal. R. 260(b). Defendant addressed plaintiff's list of undisputed facts. (ECF No. 160-3.) However, in his opposition to defendant's motion, plaintiff largely failed to comply with Local Rule 260(b). (See ECF No. 161.) Plaintiff's opposition to defendant's summary judgment motion mentions only a few of the facts set out by defendant and, with a few exceptions discussed below, fails to clearly accept or dispute them.

////

////

In light of plaintiff's pro se status, this court has reviewed both parties' filings and statements plaintiff made in his verified complaint and of which he has personal knowledge. This court finds the following facts material to plaintiff's Eighth Amendment claim and undisputed:

1. In 2018, plaintiff was incarcerated at the California Medical Facility ("CMF") and defendant was a physician at CMF. (DSUF #1.)

2. Plaintiff was born on July 18, 1952. He is African American. (DSUF #2.)

3. On August 8, 2017, plaintiff underwent a PSA assay, ordered by a non-party doctor, Dr. Teng. At that time, plaintiff had a total PSA level of 2.8 nanograms per milliliter, with free PSA of 1.1 ng/mL, and a ratio of 39% free PSA. (DSUF #2.)

4. Defendant first became involved in plaintiff's care on or about November 20, 2017. (DSUF #3.)

5. Over about the next year, defendant treated plaintiff regularly. (DSUF #4.)

6. Plaintiff requested PSA testing again, which defendant ordered, and which was performed on March 22, 2018. This assay showed a result of 3.1 ng/mL. The assay did not include a free PSA level. (DSUF #4; PSUF #3.)

7. On October 26, 2018, plaintiff saw defendant for a general checkup. At that time, plaintiff was complaining of fatigue and urinary symptoms. (DSUF #6.)

8. Defendant diagnosed plaintiff with benign prostatic hyperplasia ("BPH"). Defendant ordered further PSA testing and prescribed the medication Tamsulosin for BPH. (DSUF #6.)

9. On November 2, 2018, pursuant to defendant's order, plaintiff underwent another PSA assay, with a result of 3.8 ng/mL. (DSUF #7; PSUF #3.)

10. Defendant saw plaintiff again on November 21 and 26, 2018. Defendant's notes of these visits do not contain any prostate-related complaints. (DSUF #8.)

11. Defendant next saw plaintiff in relation to his prostatic condition on December 21, 2018. Defendant and plaintiff discussed plaintiff's use of Tamsulosin for BPH. (DSUF #9.)

////

12. At a visit on December 28, 2018, defendant discussed plaintiff's November 2 PSA testing. Plaintiff requested repeat testing every 45 days. (DSUF #10.)

13. Later that same day, December 28, 2018, defendant called plaintiff back to the clinic in regard to a 602 grievance plaintiff had submitted on or about November 26, 2018. In the grievance, plaintiff requested an individualized diet for "prostate cancer," and requested that he have his PSA assayed every 45 days. (DSUF #11.)

14. Defendant told plaintiff there was no medical definition for a diet for prostate cancer and that having a PSA assay every 45 days was not medically necessary. (DSUF #11.)

15. Following the December 28, 2018, appointment, defendant was assigned to another work area and did not see plaintiff again until 2020. After December 28, 2018, and in regard to his prostatic condition, plaintiff began to be treated by his new primary care doctors, Michelle Shute, M.D. and Balraj Dhillon, M.D. (DSUF #12.)

16. Plaintiff's first appointment regarding his prostatic condition with his new doctors was with Dr. Shute on June 20, 2019. At this time, plaintiff reported a family history of prostate cancer and requested a prostate biopsy. Neither the family history nor plaintiff's request is documented in any of defendant's notes pertaining to plaintiff's care. Regarding the family history, it is not documented in any of plaintiff's prior medical records. (DSUF #12.)

17. At the June 20, 2019 appointment, Dr. Shute ordered lab tests including a complete PSA assay. According to Dr. Shute's notes, she agreed with the diagnosis of BPH. (DSUF #12.)

18. The PSA assay ordered by Dr. Shute took place on June 25, 2019, with a result of 4.3 total PSA, 1.0 free PSA, and ratio of 23%. (DSUF #13; PSUF #4.)

19. In notes from a July 19, 2019 visit with plaintiff, Dr. Shute referred plaintiff to urology based on the 4.3 PSA and family history. She also states that while plaintiff's PSA was over 4.0, "the trend in increase has been 0.7 per year for the last three years which is normal." (ECF No. 105 at 22-23.)

9

20. Plaintiff had a urology consult on or about September 5, 2019, with Alexander Liu, M.D. of San Joaquin General Hospital. According to Dr. Liu's notes, he considered plaintiff to have BPH with "slightly elevated PSA." Dr. Liu noted that the "Overall suspicion is low." He discussed the situation with plaintiff who decided to go ahead with a biopsy. (DSUF #14.)

21. Plaintiff underwent a prostate biopsy on October 24, 2019. This biopsy showed left-side invasive prostatic adenocarcinoma of Gleason pattern 3+3. Plaintiff's cancer was later determined to be stage 1. (DSUF #15; PSUF #5.)

22. Plaintiff has no medical training. (DSUF #31.)

**C. Discussion**

The parties dispute two significant facts: (1) whether defendant knew, or should have known, that plaintiff had a family history of prostate cancer; and (2) whether plaintiff asked defendant to order a biopsy. For purposes of the analysis here, this court will assume, without finding, that both facts are true – defendant knew plaintiff had a family history of prostate cancer and plaintiff asked defendant to order a biopsy. Further, this court will assume, without finding, that plaintiff's condition amounted to a serious medical need under the Eighth Amendment. Even construing those facts in plaintiff's favor, plaintiff fails to show that a jury could find defendant acted with deliberate indifference.

Plaintiff's arguments that defendant exhibited deliberate indifference to care of plaintiff's prostate rely almost solely on his own opinions. With few exceptions, the facts or medical standards plaintiff cites are not supported by competent evidence. When plaintiff does provide potentially competent evidence – such as a publication from the National Cancer Institute – that evidence does not establish that defendant violated the standard of care, much less that he was deliberately indifferent to plaintiff's needs, when he did not order PSA testing every 45 days, a biopsy, or a special diet.

Plaintiff presents the following evidence which is not already set out above and which involves prostate issues, rather than the kidney issues which he has withdrawn.

////

1. A National Cancer Institute document regarding the prostate which, in relevant part, notes that African American men, men with an immediate family member who has had prostate cancer, and men over 50 should start the PSA screening process at a younger age because they are at a higher risk for prostate cancer. It also notes that a PSA lower than 4.0 has been considered normal but that it is possible to have a lower PSA and prostate cancer. Finally, the document both states that a continuous rise in the PSA level can be a sign of prostate cancer and cites a study finding, among other things, that "PSA velocity added no independent value to the predication of prostate cancer." (ECF No. 105 at 12-17.)

2. A document entitled "Bill Faloon's PSA Blood Test Results Years 2003 to 2018." It appears to include Mr. Faloon's personal experience with prostate cancer. Mr. Faloon claims a diet and frequent PSA testing reduced his PSA. (ECF No. 105 at 30; ECF No. 161 at 45, 76-77.)

3. A copy of plaintiff's claim to the Government Claims Program. (ECF No. 105 at 33-34.)

4. An article from the San Quentin News about the amount CDCR allotted yearly for each prisoner. (ECF No. 105 at 35.)

5. Documents regarding plaintiff's complaints about care he received between 2008 and 2011 for his colon by a non-party doctor. (ECF No. 161 at 12-17 (pleading in proceeding before the state Medical Board); at 23-36 (complaint filed in 2010 case in this court).)

6. News articles regarding the medical care of prisoners generally. (ECF No. 161 at 18-19; 72-75.)

7. An article from an unnamed source regarding general racial discrimination against inmates in the California prisons. (ECF No. 161 at 37-38.)

8. Documents showing defendant's medical education and licensing. (ECF No. 161 at 40-43.)

////

    9. A medical note from January 2020 showing that plaintiff had had "only two" PSA tests in the prior 18 months. (ECF No. 161 at 46.)

    10. Records from March 2017 which note that plaintiff is at a "high risk" for colon cancer and other records regarding care for plaintiff's colon. (ECF No. 161 at 48, 78-79.)

    11. Medical Records and requests for medical care after plaintiff was diagnosed with prostate cancer in November 2019. (ECF No. 161 at 49-51; 57-63.)

    12. Declaration from other African American prisoners stating that the prisons failed to diagnose their cancers in a timely manner. (ECF No. 161 at 65; 69-71.)

    13. Plaintiff's declaration regarding the damage caused by treatment for prostate cancer. (ECF No. 161 at 66-68.)

    14. General medical information regarding the prostate. (ECF No. 161 at 78.)

    15. Inmate Advisory Council recommendations regarding inmate/staff relations. (ECF No. 161 at 80-82.)

  Nothing plaintiff presents shows that defendant was deliberately indifferent to plaintiff's medical needs when he did not order PSA testing every 45 days, a biopsy, or a special diet. General complaints about prison medical care and staff relations are not relevant to whether the defendant in this case was deliberately indifferent to this plaintiff's medical needs. Nor are specific complaints about the care received from other prison doctors by plaintiff or by other inmates. Personal histories recounted by other men regarding their PSA, prostate cancer and/or nonparty doctors bear no relevance to the claims in this case.

  With respect to the records regarding plaintiff's risk of colon cancer, plaintiff fails to demonstrate any connection between his colon issues and a risk of prostate cancer.

  Records showing the care plaintiff received after he was diagnosed with prostate cancer are not evidence that what defendant did a year prior to that time was unreasonable, much less deliberately indifferent. Plaintiff does not raise any claims about defendant's conduct after 2018. To the extent plaintiff contends he should have had more frequent PSA tests, he cannot attribute that fact to defendant when defendant was no longer plaintiff's physician during 2019.

The undisputed evidence shows that defendant Montejo diagnosed plaintiff with BPH and that diagnosis was confirmed by doctors who saw plaintiff in 2019.  In addition, Dr. Shute had the same information defendant had when she saw plaintiff in June 2019.  Plaintiff requested a PSA and a biopsy.  Based on the information available, Dr. Shute ordered only the PSA.  She did not refer plaintiff to urology until after receiving the new PSA results in July 2019.  Even then, Shute noted that the increase in plaintiff's PSA was normal.

Plaintiff's contentions that his family history of prostate cancer along with his race required a biopsy in October 2018 are not supported by the evidence plaintiff presents.  The National Cancer Institute document plaintiff submitted states that "there is no clear consensus regarding the optimal PSA threshold for recommending a prostate biopsy for men of any racial or ethnic group."  (ECF No. 105 at 13.)

In sum, plaintiff fails to provide competent evidence that the combination of his race, family history of prostate cancer, age, enlarged prostate, and 3.8 PSA test necessitated PSA testing every 45 days, a biopsy, or a special diet.  Plaintiff fails to show a jury could find defendant was deliberately indifferent to his serious medical needs.  This court does have sympathy for plaintiff's concerns about his risks of prostate cancer and his desire for aggressive treatment.  However, plaintiff's concerns are not evidence that defendant violated plaintiff's Eighth Amendment rights.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's motion to strike (ECF No. 163) is denied.

Further, IT IS RECOMMENDED that

1. Plaintiff's motion for summary judgment (ECF No. 105) be denied; and

2. Defendant's motion for summary judgment (ECF No. 159) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 17, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB Prisoner Inbox/Civil Rights/ S/step1796.msjs fr

14